CITY OF DEWITT *v.* PUBLIC SERVICE COMMISSION ET AL

5-5154                                        451 S. W. 2d 188

Opinion delivered March 16, 1970

*Wilbur H. Botts,* for appellant.

*Tom S. Lovett* and *Harry McDermott,* for appellees.

CONLEY BYRD, Justice. Appellant, the City of De-Witt, on December 2, 1965, passed an ordinance requiring all utility companies doing business within the city to maintain a business office in the city. On December 18, appellee General Telephone Company of the Southwest filed its complaint with the Public Service Commission pursuant to Ark. Stat. Ann. § 73-208(d) (Repl. 1957), alleging that the ordinance was unreasonable, unjust and unlawful and, in the alternative, that the additional expense caused by the ordinance be passed on to the defendant city rather than to all telephone company subscribers. The matter was heard by the Public Service Commission on July 8 and July 19, 1968, and the final brief was submitted on Sept. 26, 1968. On Dec. 18, 1968, the Public Service Commission, with one commissioner dissenting, found that the ordinance was unreasonable, unjust and unlawful and relieved the company of any obligation to comply with the ordinance. On appeal the circuit court denied relief to the city. Here the city contends that the Public Service Commission was without jurisdiction and that the Commission order was not based upon evidence presented at the hearing.

The findings of the Public Service Commission from which the city appeals are as follows:

"5. The DeWitt business office is a two (2) employee office in which the employees handle such office operations as receipt of customer payments, answering of customer questions interpreting and applying tariffs, and reporting all such information back to the Company. The evidence revealed that seventy-five per cent (75%) of the accounts which are handled in the DeWitt business office are paid by mail. The trend is away from personal contacts by customers at that office. Small business offices with one or two employees, such as DeWitt,

cause a problem for the Company's customers and for the Company because such offices cannot be well supervised; employee replacements for sickness, vacations and other absences must be brought in from other towns; proper training is difficult to keep the employees advised of current changes; and work flow cannot be properly spread over the entire month.

"6. A consolidated business office operation is more efficient because the work load can be spread out over the month and an employee can become more specialized in the handling of a certain operation. A consolidated business office operation also permits greater flexibility in the handling of sudden changes or emergency situations since more employees are available. There is better coverage from the standpoint of more employees where you have sicknesses, vacations, and resignations. Better supervision and training of employees is also possible with consolidation, and this results in better servicing of the customers' needs.

"7. The testimony showed that after consolidation the DeWitt customers may pay their bills either at the DeWitt payment contractor (Schallhorn Hardware in DeWitt) or mail them to the Stuttgart, Arkansas, business office. A self-addressed return envelope is included with the customers' bills. The DeWitt payment contractor is conveniently located and its hours are longer than the business office hours, permitting more time for the customers to pay their bills. A payment contractor is a reasonable method for receiving customer payments. After consolidation, questions regarding a bill can be answered by the customers calling the consolidated office in Stuttgart toll-free. Applications for service can be made by calling the same Stuttgart telephone number toll-free. Reports by customers of service outage or service difficulties will continue to be made in the same manner as before consolidation.

"8. The testimony showed that consolidation of other business offices by the Company has not resulted in a deterioration of service and it does not appear that telephone service to the DeWitt customers will deteriorate after consolidation of the DeWitt office into the Stuttgart business office. The testimony showed that the trend in the telephone industry is toward consolidation. Such consolidation is a modern method necessary to meet changing times. It appears that the decision to consolidate the DeWitt business office operation into the Stuttgart business office operation is the result of prudent business judgment and to require the business office to be maintained in DeWitt is both unreasonable and unjust and unnecessary."

The statute applicable here is Ark. Stat. Ann. § 73-208 (Repl. 1957):

"73-208. Every city and town shall have jurisdiction, acting by ordinance or resolution of its council or commission.

(a) To determine the quality and character of, and the rates for, each kind of product or service to be furnished or rendered by any public utility within said city or town, and all other terms and conditions upon which such public utility may be permitted to occupy the streets, highways or other public place within the municipality, and such ordinance or resolution shall be deemed prima facie reasonable.

.   .   .

(d) Any public utility affected by any such ordinance or resolution, or any other party authorized to complain to the Department [Commission] under Section 17 [§ 73-216] hereof, may appeal from the action of said council or commission by filing, within twenty [20] days of such final action, a written complaint with the Department [Com-

mission] setting out wherein the ordinance or resolution is unjust, unreasonable, or unlawful, whereupon the Department [Commission] shall proceed with an investigation, hearing, or determination of the matters complained of with the same procedure that it would dispose of any other complaint made to it and with like effect. . .

(e) In all matters of which by this Act the Department [Commission] and cities and towns are each given original jurisdiction, such jurisdiction shall be concurrent and the cities and towns shall take no action with respect to any matter under investigation by the Department [Commission] until the same has finally been disposed of by the Department [Commission] and the Department shall take no action with respect to any matter which is the subject of an ordinance or resolution pending before the council or commission of any city or town until the same has finally been disposed of.

(f) That nothing in this Act shall deprive or be construed as depriving any municipality of the benefits of rights accrued or accruing to it under any franchise or contract to which it may be a party, and neither the Department [Commission] nor any court exercising jurisdiction under this Act shall deprive such municipality of any such benefit or right."

POINT 1. (a): The city here makes two arguments to show that the Public Service Commission was without jurisdiction. The first is that the ordinance passed by the city, containing an emergency clause, was not final because of the possibility of filing a referendum petition pursuant to Amendment 7 of the Arkansas Constitution. The other argument is that under the terms of the franchise between the city and the telephone company, the city had a right to prevent the telephone company from moving its business office. We find no merit in the latter argument since the franchise agreement specifically provides that, "[T]he Telephone Com-

pany shall continue to exercise its right to place, remove, construct and reconstruct . . . its plant and appurtenances as the business and purpose for which it is or may be incorporated may from time to time require. . . ." Under its first argument the city contends that even though its ordinance contained an emergency clause the ordinance did not become final, for purposes of appeal under Ark. Stat. Ann. § 73-208(e), until the 30 days for filing a referendum provided in Amendment 7 with reference to franchise agreements had expired. The city has cited no authority to support its proposition and under the record here we hold that it is estopped to deny that the matter had been finally disposed of before the city council for purposes of taking an appeal under the statute.

POINT 1 (b): The city here points out that under Ark. Stat. Ann. § 73-229 (Repl. 1957), the Public Service Commission is required within 60 days after the conclusion of any hearing to file its findings and order, if any. Because of this statute it argues that the Commission was without jurisdiction to enter an order more than 60 days after the final brief was filed. We do not agree. As we interpret the statute it is directory only and noncompliance therewith does not invalidate an order of the Commission. See *Mt. Konocti Light & Power Co.* v. *Thelen,* 170 Cal. 468, 150 P. 359 (1915); *Fuller-Toponce Truck Co.* v. *Public Service Comm.,* 96 P. 2d 725 (Utah 1939).

POINT 2 (a) & (b): Under point 2 (a) the city argues that every reasonable presumption must be indulged in the validity of the ordinance and that such validity can only be overcome by clear and satisfactory evidence. Based upon this argument the city contends that General Telephone Co. did not meet its burden of proof. We disagree with appellant. Ark. Stat. Ann. § 73-208(d) provides that on appeal the department shall proceed with an investigation, hearing, or determination of the matters complained of with the same procedure that it would dispose of any other complaint made to it and with like effect. In this connection we

have repeatedly held that if the commission's order is supported by substantial evidence, free from fraud, and not arbitrary, it is the duty of the courts to permit it to stand even though the courts might disagree with the wisdom of the order. See *Allied Telephone Co.* v. *Arkansas Public Service Commission,* 239 Ark. 492, 393 S. W. 2d 206 (1965).

The record here shows that the General Telephone Company breaks down its operations into categories and that in this proceeding it is concerned only with the business office and not with its physical services such as installation and maintenance of lines and telephones.

Mr. John Skinner of Texarkana, Texas, area operation manager of General Telephone Co., testified that there has been a change in the operation of telephone companies in general which would influence whether or not management wanted to maintain the office in DeWitt, that is, that there is a trend toward consolidation. He stated that the principal reason for consolidating the business office is to effect more efficient service through better trained employees. That the employees must become familiar with all general and exchange tariffs and that the company has a problem in trying to train its people. That in consolidating the business office it would be able to accumulate accounts so as to have a concentration of people, making possible training that it cannot give in smaller offices. In the larger offices it has designated daily periods to train employees.

He says there are some eight broad work categories in its business offices and that one person can learn one or two of these and become familiar with the volume and become more efficient. In addition it can provide coverage from the standpoint of more employees with reference to sickness, vacation and resignations. He stated that by consolidating the offices it can more readily furnish service to the customer and with less loss of time—for instance, in a small office the em-

ployee who took an order had to type a number of papers to distribute to different divisions of the company before actual installation of a telephone could start and that if that employee became sick, resigned, etc., there was often as much as two weeks delay in transmitting the desired information to the proper offices before the actual physical service of installation would commence. He said that in a concentrated business office more coverage could be given to such service to the customer and less delay would result in the actual physical services needed to be performed.

In the event the company was permitted to move the office ffrom DeWitt to Stuttgart applications for new service or changing service could be made by telephone by special reverse toll or no charge to the customer. The customer could report trouble just as before by picking up the telephone. Since there was to be no change in the physical service part of the telephone operation, the customers in De Witt and nearby areas would receive just as prompt attention as before.

He pointed out that the trend was away from people coming in the business office at DeWitt to pay their bills. Their records showed that 75% of accounts are handled by mail. However, for the benefit of those persons who still wish to pay in person a payment office was being maintained in the City of DeWitt which would actually provide longer hours for the payment of bills than the business office provided.

Mr. Skinner said he had canvassed other cities where business offices had been closed and consolidated and that in no case did he receive any complaints about the treatment customers had received from the business office. In fact in one town the people he contacted were complimentary.

Other testimony by Mr. Skinner showed that there would be a savings to the General Telephone Co. of

$5,941.61 per year if the consolidation could be affected. It was his testimony that it would be unfair for the company's general subscribers to absorb this cost.

The city, on the other hand, produced the testimony of Mr. John Schallhorn, Mayor of the City of DeWitt; Mr. Dupslaff, Mayor of St. Charles; Mr. Herbert Holzhauer, Mayor of Gillett; Mr. W. W. Turner, President and Chairman of the Board of the Bank of Gillett and a member of the Farm Bureau of Arkansas County; Mr. Harold Stephenson, an Alderman from Ward 2 in the City of DeWitt; and Mr. John L. Peterson, the County Judge of Arkansas County, all of whom pointed out that the City of DeWitt was the center of commerce of the areas served by the business office and that it would be a convenience to the people there involved to do their telephone company business in DeWitt rather than Stuttgart. They pointed out that the average businessman would be in DeWitt once or twice a week whereas, they would not average going to Stuttgart, a distance of some 50 miles, more than once or twice a month. However, each of the witnesses stated, in answer to questions from Commissioner Downie, that if the removal of this business office to Stuttgart would cause an upgrading of their present service they would favor the move. Needless to say, each witness had many complaints with reference to the telephone company's service. However, their complaints may have been considered by the Commission as going to that part of the telephone company's operation designated "physical services" rather than having to do with the business office.

Based upon the record before us we are not in a position to say that the Public Service Commission order was arbitrary. We certainly cannot say that Mr. Skinner's testimony is not substantial enough to support the decision of the Commissioners.

Under its Point 2 the City also argues that the concurring members of the Public Service Commission were arbitrary throughout the proceeding. The City's

argument here is apparently based upon some rather stern inquiries made by the Commissioners relative to physical services furnished by the General Telephone Co. in and around Cabot, Jacksonville, and Stuttgart where other business offices have been closed or consolidated. These inquiries or exchanges occurred between the Commission members and the General Telephone Company's witness, Mr. Skinner. We find nothing in these inquiries with reference to physical services to show that the concurring members were arbitrary with reference to the removal of the business office from DeWitt.

Affirmed.

HARRIS, C. J. and FOGLEMAN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I agree with that portion of Commissioner Malone's dissent where he points out that "there is no reasonableness in moving the office from DeWitt because DeWitt is the more centrally located city in Arkansas County, while Stuttgart is located in the Northwestern part of the county and is some forty-five to fifty miles distance away from the South border of that County.

This could not possibly be in the public interest, and, therefore, it is my opinion that the Commission erred in this finding permitting the telephone company to move its business office."

The order made should always be consistent with the interest of the public. *Arkansas Power and Light Company* v. *Arkansas Public Service Commission,* 226 Ark. 225, 289 S. W. 2d 668. In *Barnes* v. *Arkansas Public Service Commission,* 235 Ark. 683, 362 S. W. 2d 1, this court italicized the following statement, "The problem of the commission was to determine the best interests of the people of the whole area in question." Here, the area is the southern district of Arkansas County.

I feel that the convenience of the people who live in this part of the county requires an office in DeWitt, and I am of the opinion that the evidence established that fact. I do not consider that the testimony of Mr. Skinner constituted substantial evidence that the *public* would be better served if the company were permitted to close that office and maintain only the Stuttgart office. While Mr. Skinner testified that there is a trend over the country to consolidate offices, and that the principal reason for consolidating the business office is to effect more efficient service through better trained employees, I feel that the record indicates that a primary reason for desiring to close the DeWitt office was to effect a savings to the telephone company. The witness said that $3,328.00 per year would be saved in wages which did not include fringe benefits, such as vacation pay, sickness and disability benefits; that $600.00 per year in rent would be saved and approximately $324.00 per year in utilities. There would also be a saving in miscellaneous expenses, janitorial, etc. But this was not all of the evidence with regard to savings to the company if the office were closed. For instance, the following appears in the transcript during the cross-examination of Mr. Skinner:

"Q. This business office that you have at DeWitt now, are you saying that those women are inefficient?

A. Yes, sir.

Q. Why is it you don't have efficient personnel down there?

A. Well, these people probably it is not necessarily through their own fault that they are inefficient, but the combination of circumstances, the various work functions which they must learn—and by the way, these functions constantly change, our routines, our proceedures constantly change. So. seniority not necessarily means that a person

does know everything she should know in a business office. Because of this accumulation of circumstances, our office is less than efficient in DeWitt.

Q. And you haven't maintained an efficient office down there all these years, have you?

A. There have been varying degrees of efficiency in the office.

Q. Now, if you had efficient personnel down there, they could handle this operation as well there as, they could in Stuttgart, couldn't they?

A. No, sir.

Q. Why?

A. Because of the lack of training, the inability to replace on vacations, leaves—

Q. Now, Mr. Skinner, I asked you if you had efficient personnel there?

A. Then you would have to define efficient for me.

Q. I am not a telephone man, I don't know what is efficient personnel.

A. Well an efficient person to me would be different from performing efficiently on the job. Now these people are good people. They are not dumb. They have the ability to learn, but because of our being required in this case to have a smaller office, we haven't been able to give them the training to which they are entitled. They have not operated that office efficiently.

Q. If you have efficient personnel there, there is no reason why they couldn't operate it efficiently out of the DeWitt office, is there?

A. No. That is right.

Q. It gets right back to the proposition that it is a financial savings for the telephone company, then, doesn't it?

A. Well, yes, in this extent, but not in the number of dollars which I mentioned a while ago. In order to train these people and properly supervise them, we would have to have a management employee in DeWitt who would spend their time with them. This would be costly. In addition, in order for us to operate the office an eight hour period, we would have to pay for eight and a half or nine hours a day for each of these employees to give them the same training that they are able to receive in Stuttgart without our having to do this, or will be able when we have these accounts accumulated in Stuttgart.

Q. I didn't follow you there, Mr. Skinner.

A. Well, in order to give the supervision that we would need in our DeWitt business office, would require more management time than we have available to them, so whatever proportionately more time management employees would have to spend in DeWitt would be costly to that extent. In addition, so as to be able to hold training courses for these girls, we would have to do this outside of our normal business office hours so as to be able to keep the office open the same length of time we are now. This again would be costly to us in salary dollars."

There is a great deal more along this line, but the above suffices to show the reason I think that a financial saving to the company is of paramount importance in appellee's effort to close down the DeWitt business office, and I reiterate that I do not agree there was substantial evidence that the public would benefit by this action.

I therefore respectfully dissent.

FOGLEMAN, J., joins in this dissent.